## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL L. WILSON, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | Civ. No. 8:17-cv-228 |
| v. ) | |
| ) | **CLASS ACTION COMPLAINT** |
| WEST CORP., THOMAS B. BARKER, LEE ) ADREAN, DONALD M. CASEY, JR., ) ANTHONY J. DINOVI, PAUL R. GARCIA, ) LAURA A. GRATTAN, JEANETTE A. ) HORAN, MICHAEL A. HUBER, DIANE E. ) OFFEREINS, GREGORY T. SLOMA, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) ) | |

**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael Wilson ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1. Plaintiff brings this action on behalf of himself and the public stockholders of West Corporation ("West" or the "Company") against West's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to an affiliate of certain funds which are managed by Apollo Global Management, LLC ("AGM").

2. On May 9, 2017, AGM and the Company announced that they had entered into a definitive agreement on May 9, 2017 ("Merger Agreement"), under which Mount Olympus

1

Holdings, Inc. ("Parent"), through its wholly owned subsidiary, Olympus Merger Sub, Inc. ("Merger Sub"), will acquire all of the outstanding shares of West in an all-cash transaction (the "Proposed Transaction"). If consummated, West stockholders will receive $23.50 in cash for each share of West stock that they own ("Merger Consideration"). The Proposed Transaction has an enterprise value of approximately $5.1 billion.

3. On June 19, 2017, Defendants issued materially incomplete and misleading disclosures in the Form PREM14A Preliminary Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy is deficient and misleading because, *inter alia*, it fails to disclose material information regarding GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, which were prepared by Company management and relied upon by Centerview Partners LLC ("Centerview"), the Company's financial advisor, who used such information to support its opinion on the fairness of the Proposed Transaction.

5. The Proxy is also deficient and misleading because it fails to provide adequate disclosure of all material information related to the Proposed Transaction, and information pertaining to AGM's communications with anyone at West concerning the possible continued employment of Mr. Barker, Mr. DiNovi or any other West officer, director, or employee following the Merger, including but not limited to the timing, content, nature, parties, and form of such communications.

6. Without additional information the Proxy is materially misleading and in violation of federal securities laws.

7.     By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the proxy was materially false and/or misleading.

8.     Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 in connection with the Proxy.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to West's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of federal securities laws and regulations.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

10.     The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) West is headquartered in this District; (b) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## **PARTIES**

12.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of West.

13.     West is a corporation organized and existing under the laws of the State of Delaware.  The Company maintains its principal executive offices at 11808 Miracle Hills Drive, Omaha, Nebraska, 68154.  West common stock trades on the New York Stock Exchange under the ticker symbol "WSTC."

14.     Defendant Thomas B. Barker ("Barker") has served as a director of the Company since November 1997, as Chief Executive officer of the Company since 1998, and as Chairman of the Board since March 2008.

15.     Defendant Lee Adrean ("Adrean") has been a director of the Company since March 2014.

16.     Defendant Donald M. Casey, Jr. ("Casey") has been a director of the Company since December 2015.

17.     Defendant Anthony J. DiNovi ("DiNovi") has been a director of the Company since 2006.

18.     Defendant Paul R. Garcia ("Garcia") has been a director of the Company since March 2013.

19.     Defendant Laura A. Grattan ("Grattan") has been a director of the Company since October 2012.

20.     Defendant Jeanette A. Horan ("Horan") has been a director of the Company since April 2016.

21.      Defendant Michael A. Huber ("Huber") has been a director of the Company since January 2014.

22.     Defendant Diane E. Offereins ("Offereins") has been a director of the Company since July 2015.

23.     Defendant Gregory T. Sloma ("Sloma") has served as a director of the Company since March 2013.

24.     Defendants Barker, Adrean, Casey, DiNovi, Garcia, Grattan, Horan, Huber, Offereins, and Sloma are collectively referred to as "Individual Defendants" and/or the "Board."

25.     Relevant non-party Parent is an affiliate of the certain funds ("Apollo Funds") that are managed by AGM. Parent was created solely for the purposes of effectuating the Proposed Transaction. Parent's principle executive offices are located at 9 West 57th Street, 43rd Floor, New York, New York, 10019.

26.     Relevant non-party Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent that was created for the purposes of effectuating the Proposed Transaction.

27.     Relevant non-party Apollo Management VIII, L.P. ("Apollo Management") manages the Apollo Funds. When Apollo Management is acting on behalf of the Apollo Funds, they are referred to as "Apollo."

28.     Relevant non-party Apollo Investment Fund VIII, L.P., Apollo Overseas Partners (Delaware 892) VIII, L.P., Apollo Overseas Partners (Delaware) VIII, L.P., and AOP VIII (AIV), L.P. are collectively the "Guarantors" of Parent and Merger Sub.

## CLASS ACTION ALLEGATIONS

29.     For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of West stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by,

or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

30.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

31.     The Class is so numerous that joinder of all members is impracticable.  According to the Proxy, as of June 19, 2017, West had 83,568,652 shares of common stock outstanding. While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, the Plaintiff believes that there are thousands of members in this Class.  All members of the Class may be identified from records maintained by West or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

32.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following: (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct.

33.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

34.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

35.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

36.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

38.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background*

39.     West is a global telecommunications company which provides communications and network infrastructure services. The Company provides specialized services, such as unified communications, conferencing technologies, and safety services. The Company was founded in 1986 and first became a publically-traded company in 1996.

*The Sale Process*

40.     In September 2015, representatives from Party A reached out to Defendant Barker and Mr. David Treinen, the Company's Executive Vice President for Corporate Development and Planning, regarding a strategic transaction. After receiving a preliminary indication of interest from Party A in January 2016, the Company began discussing with Party B a similar transaction which might take place with Party C (a portfolio company of Party B's).

41.     On January 28, 2016, Company management and the Board determined that Party A's preliminary indication of interest did not include an attractive valuation and that the board should first consider potential alternative strategic and financial transactions.

42.     On February 19, 2016, Defendant Barker met with Party B to further discuss the potential transaction with Party B's portfolio company, Party C.

43.     On June 23, 2016, the Company executed an engagement letter with Centerview to assist the Company with any acquisition proposals it might receive.

44.     In June 2016, Party D approached the Company about a possible business combination.

45.     In June, Mr. Treinen and Centerview met with Party B to further discuss the potential transaction with Party C, and Party B indicated that it may return with a proposal.

46.     On July 29, 2016, at a regular Board meeting, management and the Board discussed the status of conversations with party A and Party B, as well as the offer from Party D.

47.     In August 2016, Party E (a representative of a financial sponsor) contacted the Company to indicate interest in a possible business combination.

48.     At a regular meeting of the Board on October 27, 2016, the Board continued to discuss the ongoing conversations with Party A, Party B, Party D, and Party E and also determined that due to declining profitability and overall revenue the Company should formally explore possible strategic and financial alternatives, such as outreach to potential bidders.

49.     After the close of trading on November 1, 2016, the Company announced its decision to retain Centerview as its financial advisor and its decision to explore a potential sale of one or more of West's business segments.

50.     In late-November 2016, at the Board's direction, Centerview began providing potential bidders with a confidential information memorandum ("CIM"), which contained nonpublic business and financial information including financial projections for the years 2017-2019. Centerview sent these CIMs to over 20 potentially-interested parties, including Apollo, Party A, Party B, Party D, and Party E.

51.     On December 14, 2016, Centerview was informed by Party E that they would not submit a proposal.

52.     On December 16, 2016, the Company received a written indication of interest from Party B which proposed that West acquire Party C.

53.     On December 20, 2016, Party D notified Centerview that it would not be submitting a proposal.

54.     On December 20, 2016 and December 21, 2016, the Company received preliminary indications of interest from Apollo, Party F (who was bidding together with party I) and Party H regarding a potential whole company acquisition.

55.     Apollo's proposal had a per share price range of $26.00 to $30.00.

56.     Party F's proposal had a per share price range of $26.50 to $28.50.

57.     Party H's proposal had a per share price range of $25.00 to $26.00.

58.     On January 10, 2017, the Board discussed the preliminary proposals, including Party B's, and determined to prioritize negotiations with those parties seeking a potential acquisition of the whole Company over those parties seeking acquisitions of separate business segments.

59.     After the January 10, 2017 meeting, Centerview informed Party A that West would be prioritizing potential acquisitions of the whole Company for the time being.

60.     On January 21, 2017, Apollo, Party F (together with Party I) and Party H were provided access to a virtual data room with additional information regarding the Company and its business operations.

61.     On or around February 28, 2017, Centerview and the Board determined to solicit additional offers from companies interested in acquiring particular segments. However, the Company, in consultation with Centerview determined not to contact three parties that had previously indicated such an interest, Party K because the Company believed their preliminary interest to be insufficient, and Party G and Party J because the Company did not view an efficient partnership between Party G and Party J as being likely. In addition, Centerview was notified by Party A that they would no longer participate in the process.

62.     On or around March 9, 2017, Party F withdrew their interest due to industry trends, recent operating performance and financial outlooks of West's Unified Communications segment. Party I did not continue in the process without Party F.

63.     On March 24, 2017, the Board met to discuss the status of the proposals received. Centerview informed the Company that there were only three remaining active bidders: Apollo, Party H and Party L. Party H and Party L both expressed interest in solely potential acquisitions of segments of West and not a whole company acquisition. Apollo remained interested in whole company acquisition.

64.     On March 29, 2017, Centerview sent Apollo, Party H, and Party L a letter requesting a final proposal by April 13, 2017.

65.     On April 5, 2017, at Apollo's request, Company management, Centerview, and Apollo met in a series of diligence meetings in Chicago.

66.     On April 13, 2017, the Company received a non-binding bid for a Potential Whole-Company Acquisition from Apollo for $23.00 per share in cash.

67.     On April 13, 2017, Party H submitted a non-binding bid for a potential acquisition of the non-Unified Communication Services segments for between $2.4 billion and $2.6 billion in cash.

68.     On April 13, 2017, Party L submitted a non-binding bid for a potential acquisition of the Interactive Services and Safety Services segments and certain assets within the Specialized Agent Services segment for $2.36 billion in cash.

69.     Apollo explained that their revised price, lower than its initial offer, reflected additional information discovered through Apollo's due diligence, including recent industry trends, and the Company's recent operating performance.

70.     On April 17, 2017, the Board instructed Centerview to reach out to Party H and Party L to see if they would reconsider a potential whole company acquisition or were interested in alternative transactions, such as a sponsored spin-off.

71.     Over the next week the Company's counsel negotiated the terms of the merger agreement with Apollo. On April 19, 2017, Apollo raised their offer price to $23.50.

72.     On April 26, Centerview informed the Board that Party H and Party L reconfirmed that they did not wish to pursue a whole company acquisition. Centerview also informed the Board that Party L was not interested in alternative transactions but that Party H was interested in a potential sponsored spin-off. However, Centerview also informed the Board that Party H indicated to pursue this option would take additional time and due diligence. The Board then concluded that continued discussions with Party H or Party L were not likely to produce a more favorable offer then Apollo's.

73.     On May 7, 2017, the Board had a telephonic meeting to discuss the Apollo offer and agreed to reconvene after the close of trading on May 9, 2017 to discuss whether or not to approve the transaction.

74.     On May 7, 2017, following the discussion of the Apollo offer, Defendant DiNovi stated that Thomas H. Lee Partners, L. P. ("THL") and Quadrangle Group LLC ("Quadrangle"), two of West's largest investors, would be willing to use $3 to $5 million (in aggregate) of their proceeds from the potential transaction with Apollo to fund a retention plan for West's senior management. The Proxy states that the Board determined to defer this discussion until after the merger agreement. The Proxy also states that the Company and Apollo had a discussion regarding this additional retention plan and that Apollo did not provide consent and the additional plan was not adopted. It is unclear precisely when this conversation took place, nor why THL and Quadrangle would be willing to offer such in order to further the completion of the Proposed Transaction.

75.     On May 9, 2017, the Board unanimously approved the merger agreement after trading had closed for the day. During the evening of May 9, 2017 the Company and Parent executed and agreed to the Merger Agreement.

76.     West and AGM issued a joint press release on the matter.

77.     West and AGM's press release stated the following relevant information:

"West Corporation (Nasdaq: WSTC) (the "Company" or "West"), a global provider of communication and network infrastructure services, today announced it has entered into a definitive agreement with affiliates of certain funds managed by affiliates of Apollo Global Management, LLC (the "Apollo funds") (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo funds will acquire all of the outstanding shares of West common stock for $23.50 per share in cash.

The purchase price represents a premium of approximately 17.5 percent over West's closing stock price on November 1, 2016, the last trading day prior to the

announcement that the Company initiated a process to explore strategic and financial alternatives. The proposed transaction has an enterprise value of approximately $5.1 billion, including net debt.

The West Board of Directors has unanimously approved the agreement with the Apollo funds and recommends that West stockholders vote in favor of the proposed transaction. Certain West stockholders, including Thomas H. Lee Partners, L.P., Quadrangle Group LLC, Gary L. West and Mary E. West, who in the aggregate beneficially own approximately 45 percent of West's outstanding common stock, have committed to vote in favor of the proposed transaction, subject to certain customary conditions, at a special meeting of West stockholders.

"We are pleased to reach this agreement with the Apollo funds, which follows a comprehensive review of alternatives initiated by West's Board of Directors in November," said Tom Barker, Chairman and Chief Executive Officer of West. "We believe this transaction achieves our goal of maximizing value for West stockholders and positions the Company for continued success. Apollo values our team, assets and vision for the future. We look forward to working closely with Apollo as we continue to grow and strengthen our business."

Mr. Barker continued, "We began this process with the acknowledgement of the disparate trends in our various businesses. Over the past six months, we have evaluated a wide range of strategic and financial alternatives, including the sale or separation of assets; various balance sheet options; as well as continuing to operate under our current structure. We believe strongly that the transaction we are announcing today is the best outcome for our stockholders, employees and customers."

"We are extremely excited for our funds to acquire West," said Matthew Nord, Senior Partner at Apollo. "West is the leader in global conferencing and collaboration services, and is well-positioned to capitalize on customer migration to cloud-based solutions and continue to grow its Safety Services, Interactive Services and Health Advocate Solutions businesses. We look forward to working with West's talented and dedicated team to continue the strong heritage of providing the highest-level of service and care to its customers.

Transaction Details

The transaction is expected to close in the second half of the year. The transaction is subject to receipt of certain regulatory approvals, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, approval by the U.S. Federal Communications Commission and certain state and foreign regulatory approvals, as well as West stockholder approval and other customary closing conditions. Following the transaction West will become a privately held company and shares of West's common stock will no longer be listed on any public market.

As a condition to the transaction, West has agreed to suspend payment of its quarterly dividend, effective immediately."

78.     The Proxy is silent as to negotiations between AGM and West or its executives as to the future employment of West executives with the combined company.

***The Proxy Misleads West Stockholders by Omitting Material Information***

79.     On June 19, 2017, West filed a materially misleading and incomplete Proxy with the SEC which was designed to convince shareholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the process that led up to the execution of the Merger Agreement, including the projected financial information provided to Centerview by West management to support the rendering of its fairness opinion, and information regarding potential conflicts of interest faced by West senior management when leading the search for strategic alternatives that ultimately resulted in execution of the Merger Agreement.

***Potential Conflicts Facing Company Management and Directors***

80.     The Proxy contains material misrepresentations and omissions regarding employment negotiations taking place in the lead up to the Merger Agreement.

81.     The Proxy indicates that not only did Defendant DiNovi, a Board Member of West and Co-President of THL, take part in evaluating offers but that he also brought an offer from THL and Quadrangle to the Board that may have included conflict-inducing incentives for management to favor the transaction with Apollo.

82.     Defendant DiNovi brought an offer to the Board prior to the signing of the Merger Agreement which indicated that THL and Quadrangle would forego part of their proceeds from the Proposed Transaction to set up employee retention plans for West's senior management so as to further ensure that the Proposed Transaction with Parent was successful.

14

83.    The Proxy materially misleads West stockholders when it omits material facts concerning communications between AGM and the Board or any West senior management regarding post-transaction retention of West's management and/or directors. The fact that THL and Quadrangle offered to supplement an employee retention plan for senior management clearly indicates that there must have been some additional discussions relating to the continued employment and/or retention of West senior management. Moreover, given that AGM is a private equity buyer, rather than a strategic purchaser, the likelihood is very high that AGM pursued communications concerning its intention to retain management, as such buyers typically do in such transactions.  Such discussions must have occurred while the Proposed Transaction was being negotiated, but are not disclosed in the Proxy.

84.    The failure to disclose the content and timing of such discussions materially misleads West's stockholders as to the appropriateness of the Board's decision to not conduct any kind of further market check with respect to the merger price, and the potential conflicts of interest faced by Company management and the Board in supporting the merger. Similarly, the omission of information concerning the circumstances and interests that prompted THL and Quadrangle to offer to fund a retention plan renders the Proxy materially incomplete and misleading, as this proposal implicates significant undisclosed conflicts of interests.

85.    The omitted information concerning the timing, content, and parties involved in these communications concerning the retention of West's management and directors would significantly alter the total mix of information that Defendants have disclosed to solicit stockholder approval of the Proposed Transaction. The conflicts of interests created and fostered by such communications would affect the stockholders' perception and analysis of the entire process and the ultimate fairness of the Proposed Transaction. Thus the statements in the Proxy, including but

not limited to the statements concerning Defendant DiNovi's role in the negotiations, are rendered materially misleading by these omissions.

***Misleading Statements and Omissions Regarding the Company's Financial Projections***

86.     The Proxy fails to disclose material information concerning the Company's financial projections relied upon by Centerview in preparing its fairness opinion.

87.     The Proxy discloses two non-GAAP accounting metrics for projected financial information over the years 2017-2021:  Adjusted EBITDA and Unlevered Free Cash Flow. However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.  Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

88.     The Proxy also fails to disclose the following Company projections for years 2017E to 2021E: (i) net income, (ii) changes in net working capital, (iii) capital expenditures; (iv) earnings before interest expense; (v) earnings per share; (vi) income taxes; (vii) interest expense; (viii) depreciation and amortization; (ix) stock based compensation; (x) amortization of intangibles; (xi) other non-recurring items used to calculate Adjusted EBITDA; and (xii) unlevered net operating profit after tax used in calculating Unlevered Free Cash Flow. Without these measures, cherry-picking the disclosed projections materially misleads West stockholders and renders Centerview's financial analysis materially incomplete and misleading.

89.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information pursuant to Regulation G. 17 C.F.R. § 244.100.

16

90.     Indeed, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

91.     Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

92.     Defendants' failure to provide West's stockholders with the foregoing material information renders the financial projections and analyses depicted in the Proxy materially incomplete and misleading, and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information, and yet omitted at least recklessly or negligently.  The material information described above that was omitted from the Proxy takes on actual significance in the minds of West's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction.  Absent disclosure of this material information prior to the vote on the Proposed

---

[1]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[2]     *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

93.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act, Rule 14a-9 Promulgated Thereunder, Against the Individual Defendants and West**

63.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act, and Rule 14a-9 in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  West is liable as the issuer of these statements.

65.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66.     The Individual Defendants were at least reckless or negligent in filing the Proxy with these materially misleading statements and omissions.

67.     The omissions and misstatements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the

total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68.     The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70.     Because of the false and misleading statements in the Proxy, plaintiff and the Class are threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of West within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of West and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in the making of the Proxy.

75.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

76.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    in the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.      directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F.      awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

## REQUEST FOR PLACE OF TRIAL

Pursuant to NECivR 40.1(b), Plaintiff respectfully requests trial of this matter in Omaha.

Dated:  June 27, 2017

LEVI & KORSINSKY LLP

/s/ Elizabeth K. Tripodi
Donald J. Enright (#MD013551)
Elizabeth K. Tripodi (#979154)
1101 30th Street NW
Suite 115
Washington, D.C. 20007
Telephone:    (202) 524-4290
(*pro hac vice forthcoming*)

CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, LLP

/s/ Jonathan J. Papik
Jonathan J. Papik (#24473)
12910 Pierce Street, Suite 200
Omaha, NE 68144
Telephone:    (402) 397-1700

*Counsel for Plaintiff*

4813-0413-1403, v. 2